David NICHOLS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2004–CA–001426–MR.

Court of Appeals of Kentucky.

Oct. 21, 2005.

Discretionary Review Denied by Supreme Court April 12, 2006.

Kimberly Ann Brooks Tandy, Covington, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Ken W. Riggs, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; HENRY and TACKETT, Judges.

## OPINION

HENRY, Judge.

William Wells is a police officer with the City of Radcliff. When off duty, Wells works as a security guard in a Kroger store in Elizabethtown. Late at night on November 2, 2003, while working at Kroger, Wells noticed David Nichols purchasing what Wells considered an unusually large quantity of a cold remedy containing pseudoephedrine. Knowing that pseudoephedrine is an essential ingredient in the manufacture of methamphetamine, Wells notified the Elizabethtown Police Department. Officer Billy Boling was then dispatched to Kroger to investigate.

On his arrival at Kroger, Boling spoke to William Wells. Wells had observed Nichols getting into a black Camaro after exiting the store. Boling "conducted a traffic stop" on the Camaro as Nichols started to drive away. Boling told Nichols why he had stopped him and asked permission to search the vehicle, which Nichols granted. The search yielded a Marlboro cigarette pack containing a marijuana cigarette and three Kroger bags contain-

ing ten boxes of pseudoephedrine pills. Although some of the pills were missing, each box had originally contained 96 pills, each containing 30 milligrams of pseudoephedrine. During questioning Nichols admitted that he was to have been paid $200.00 for buying the pills and that he knew that the pills would be used in the manufacture of methamphetamine. An indictment was returned against Nichols charging him with one count of Unlawful Distribution of a Methamphetamine Precursor, a Class D felony proscribed by KRS[1] 218A.1438, one count of Unlawful Possession of a Methamphetamine Precursor, a Class D felony proscribed by KRS 218A.1437, and Possession of Marijuana, a Class A misdemeanor proscribed by KRS 218A.1422.

Nichols, through his counsel, filed a motion to suppress all the seized evidence on the ground that Officer Boling lacked a sufficient legal reason to make an investigatory stop. When the motion was overruled, Nichols entered a conditional plea of guilty pursuant to RCr[2] 8.09, reserving the right to appeal the ruling. The charge of Unlawful Possession of a Methamphetamine Precursor was dismissed, and Nichols pleaded guilty to one count of Unlawful Distribution of a Methamphetamine Precursor and one count of Possession of Marijuana. In exchange for Nichols' plea, the Commonwealth recommended a sentence of a total of three-years' imprisonment probated for five years. On appeal, Nichols urges us to reverse the order of the trial court overruling his motion to suppress all the seized evidence, arguing that Officer Boling stopped him without a reasonable and articulable suspicion of criminal activity in violation of the Fourth and Fourteenth Amendments to the United

---

1. Kentucky Revised Statutes.

2. Kentucky Rules of Criminal Procedure.

States Constitution and Section 10 of the Kentucky Constitution. We affirm.

■ We employ a two-step process in reviewing rulings on motions to suppress evidence. We review the factual findings of the trial court for clear error, but we review that court's application of the law to the facts *de novo*. *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky.2004), *citing Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). There appears to be no dispute about the facts in this case. The facts as found by the trial court are supported by substantial evidence and are therefore not clearly erroneous. RCr 9.78; *Taylor v. Commonwealth*, 987 S.W.2d 302, 305 (Ky.1999).

■ We must answer this question: Does a tip by a store security guard alleging that a customer has just purchased a large quantity of pseudoephedrine, when considered together with the rational inferences from that act, create a "reasonable and articulable suspicion" of possible criminal activity sufficient to justify an investigatory stop? We believe that it does.

The seminal case analyzing the reasonableness of investigatory stops under the Fourth Amendment as applied to the states by the Fourteenth Amendment is *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). And the Kentucky Supreme Court has held that "Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment." *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky.1996), *citing Estep v. Commonwealth*, 663 S.W.2d 213 (Ky.1983).

■ Although the issue is not discussed in the briefs or in the order overruling the motion to suppress, we are satisfied that when Officer Boling activated his flashing lights to stop Nichols in the Kroger parking lot, he effected a "seizure" of Nichols within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution and Section 10 of the Kentucky Constitution. "Whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Kotila v. Commonwealth*, 114 S.W.3d 226, 232 (Ky.2003), *citing Terry*, 392 U.S. at 16, 88 S.Ct. at 1877. "Whether a seizure is reasonable requires a review of the totality of the circumstances, taking into consideration the level of police intrusion into the private matters of citizens and balancing it against the justification for such action." *Id., citing Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky.1999). When reasonable circumstances exist for a brief investigatory stop, police may make the stop without probable cause that a crime has actually been committed. *Id., citing Deberry v. Commonwealth*, 500 S.W.2d 64, 66 (Ky. 1973); *see also Simpson v. Commonwealth*, 834 S.W.2d 686, 687 (Ky.App.1992). And "the level of articulable suspicion necessary to justify a stop is considerably less than proof of wrongdoing by preponderance of the evidence." *Id., citing Commonwealth v. Banks*, 68 S.W.3d 347, 351 (Ky.2001) (internal citation omitted).

At the suppression hearing Officer Wells testified that Nichols made the purchase of what he considered a large amount of pseudoephedrine late at night (around midnight), that it is commonly known that pseudoephedrine is used in the manufacture of methamphetamine, that Wells would sometimes get a "hunch" or feeling about customers who purchased pseudoephedrine that he admittedly was unable to articulate, and that Nichols's behavior in the store caused him to have such a feeling about Nichols. Wells could not remember specifically how many boxes of cold medicine Nichols purchased. He could only

remember that it was "three or more boxes." Wells also admitted that cold remedies containing pseudoephedrine are legal to purchase and possess.

In *Terry* the United States Supreme Court recognized that, in determining whether the seizure and search of Terry was unreasonable under the Fourth Amendment, the Court's inquiry "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879. The Court would not approve "intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches." *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. The Court aimed instead at an objective standard whereby the courts must inquire whether the "facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate[.]" *Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880. The facts available to the officer in *Terry* were the officer's observation of Terry and another man as they stood talking on a street corner. Each of the men in turn walked down the street and stood briefly looking into a store window, then returned and talked to the other. This conduct was repeated several times. The Court noted that the series of actions observed by the officer might seem innocent when viewed alone, but "taken together warranted further investigation."

*Terry*, 392 U.S. at 22, 88 S.Ct. at 1880–1881. In analyzing the reasonableness of an officer's conduct after the fact courts should give due weight not to an officer's mere "hunch", "but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

Because pseudoephedrine or ephedrine is necessary to manufacture methamphetamine, the General Assembly has made possession of those substances with intent to manufacture methamphetamine a felony. KRS 218A.1437. Under the version of the statute in effect at the time Nichols made this purchase, possession of drug products containing more than twenty-four grams of pseudoephedrine established a prima facie case that the pseudoephedrine was intended to be used to manufacture methamphetamine [3]. KRS 218A.1437(2)(a). A recent amendment to the statute [4] has reduced the amount to nine grams. Therefore, unlike other legal ingredients of methamphetamine, possession of a sufficient amount of pseudoephedrine may constitute a criminal offense in itself.

The facts of this case present a close question because, like the facts in *Terry*, the suspicious act viewed alone appears as consistent with legal as with illegal activity. We believe that the purchase of a large amount of pseudoephedrine, together with the rational inferences that a trained police officer would make as a result of the purchase, justified a brief investigatory

---

3. The exact amount of pseudoephedrine Nichols had in his possession was never clearly established. Some of the packages were open and some pills were missing. The packages had originally contained 960 pills, each with a dosage of 30 mg. of pseudoephedrine, which would have totaled 28.8 grams of the drug.

4. Senate Bill 63, signed into law March 18, 2005, affected several sections of KRS Chapter 218A, including KRS 218A.1437.

stop. *See United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Nichols was detained only very briefly, and when advised of the reason he was stopped, he quickly gave the officer consent to search his vehicle. The brief stop was justified, and the officer's actions after the stop were reasonable in scope. We affirm.

ALL CONCUR.