**Jacob HENSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2005–SC–000666–DG.

Supreme Court of Kentucky.

Feb. 21, 2008.

---

Kimberly Brooks Tandy, Covington, KY, Counsel for Appellant.

Jack Conway, Attorney General, Todd D. Ferguson, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

In response to an anonymous tip that Jacob Henson was a passenger in Greg Haddix's black Pontiac Grand Am and that he was carrying drugs, Officer Larry Turner of the Jackson Police Department located the parked Grand Am and asked Henson to step outside of the vehicle. After first denying that he had any drugs or contraband, Henson complied with Turner's request to empty his pockets, producing a small case containing cocaine and several used hypodermic needles. Henson was then arrested and subsequently indicted for possession of a controlled substance and drug paraphernalia. Prior to trial, Henson moved to suppress the evidence seized from his person on the ground that the investigatory stop was improper. The Breathitt Circuit Court concluded that the tip Officer Turner acted upon was sufficiently reliable to justify the stop of Henson and denied his suppression motion. Henson then entered a conditional guilty plea and was sentenced to five years of probation. On appeal, the Court of Appeals affirmed the denial of the suppression motion in a 2–1 decision. Before this Court on discretionary review, Henson contends that because there was no independent corroboration of the anonymous

tip, Officer Turner's investigatory stop was not justified. Having concluded that under the totality of circumstances the stop was not justified, we reverse the Court of Appeals decision.

## RELEVANT FACTS

On February 27, 2003, an anonymous caller telephoned the Jackson, Kentucky Police Department with information about two local residents, Greg Haddix and Jacob Henson. The caller stated that Haddix was driving a black, Pontiac Grand Am, Henson was riding in the passenger seat, and Henson had illegal drugs in his possession. Officer Turner, who knew both of the suspects and knew that Haddix drove a Grand Am, was then dispatched to check on the vehicle. Turner located the Grand Am parked on Sewell Street in Jackson. As Turner pulled up next to the vehicle, he observed Henson sitting in the passenger seat but Haddix was neither in the vehicle nor anywhere around it. Turner walked to Henson's side of the car and asked him to step outside of the vehicle. After Henson exited the car, Turner inquired whether he had any drugs or contraband with him, and Henson replied that he did not. Turner then told Henson to empty his pockets. After Henson removed a small case from his pocket and laid it on the hood of the car, Turner asked him to open the case. Henson complied and removed a small plastic bag from the case, which contained a white substance that Henson identified as cocaine. Henson also removed some hypodermic needles from his pocket that appeared to have been used. Turner then placed Henson under arrest.

On April 25, 2003, a Breathitt County Grand Jury indicted Henson for first degree possession of a controlled substance (cocaine) and possession of drug paraphernalia. Henson moved to suppress the co-caine and needles seized. The trial court held a suppression hearing on October 28, 2003. in a December 30, 2003 Order, the trial court concluded that because Officer Turner was able to corroborate a significant amount of the information supplied by the anonymous tipster, the tip was sufficiently reliable to justify the stop of Henson. Henson then entered a conditional guilty plea to both possession charges, as well as to a flagrant non-support charge under a separate indictment. On April 23, 2004, Henson was sentenced to three years for the non-support charge, three years for the possession of a controlled substance charge, and twelve months for the possession of drug paraphernalia, all sentences to run concurrently and the resulting three year sentence to be probated for five years. Henson appealed these convictions, and in a split decision, the Court of Appeals affirmed the trial court's suppression ruling, finding that Officer Turner sufficiently corroborated the anonymous tip, the initial stop was justified, and Henson voluntarily consented to emptying his pockets and removing the cocaine and the needles. On discretionary review, we conclude the anonymous tip was not suitably corroborated and did not provide sufficient indicia of reliability to justify the initial stop, tainting any alleged subsequent consent.

## ANALYSIS

■■■■ "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). As the Commonwealth correctly notes, when Officer Turner approached Henson's vehicle parked on a public street and made inquiries he did not conduct a "seizure" or in

any way violate the Fourth Amendment. *See Commonwealth v. Banks,* 68 S.W.3d 347, 350 (Ky.2001) (stating that "[p]olice officers are free to approach anyone in public areas for any reason"). However, the Commonwealth does not refute the trial court's underlying, and indeed correct, assumption that once Officer Turner asked Henson to step outside of his vehicle, Henson was not free to leave and was subject to an investigatory stop or seizure.[1] Under the Fourth Amendment, therefore, at the time Officer Turner asked Henson to exit his vehicle, Turner had to have a reasonable suspicion, based on objective and articulable facts, that Henson was engaged in criminal activity. *See Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *U.S. v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 1885, 20 L.Ed.2d 889 (1968). To determine whether an officer had such reasonable suspicion, this Court must look at the totality of the circumstances surrounding the detention. *U.S. v. Cortez,* 449 U.S. at 417, 101 S.Ct. at 695. We review this question of law *de novo* but review the trial court's accompanying findings of fact under the "clearly erroneous" standard. *Ornelas v. U.S.,* 517 U.S. 690, 691, 116 S.Ct. 1657, 1659, 134 L.Ed.2d 911 (1996); *Banks,* 68 S.W.3d at 349.

■ The primary circumstance in this case was the anonymous tip reported to the Jackson Police Department. Before an investigating officer can rely on an anonymous tip as part of his basis for reasonable suspicion, that tip must have sufficient indicia of reliability. *Hampton v. Commonwealth,* 231 S.W.3d 740, 745 (Ky.2007); *see Florida v. J.L.,* 529 U.S. 266, 276, 120 S.Ct. 1375, 1381, 146 L.Ed.2d 254 (2000); *Alabama v. White,* 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). The U.S. Supreme Court has recognized that if the anonymous tip is "suitably corroborated," then it is possible for the tip to establish the required degree of suspicion to justify a stop. *J.L.,* 529 U.S. at 270, 120 S.Ct. at 1378; *White,* 496 U.S. at 327, 110 S.Ct. at 2414. In this case, the anonymous tipster stated that Haddix was driving a black Pontiac Grand Am, Henson was riding in the car with him, and Henson had illegal drugs in his possession. The Court of Appeals found that Officer Turner sufficiently corroborated this tip because he did in fact locate the specific Grand Am and found Henson seated on the passenger side. However, the U.S. Supreme Court has cautioned against finding corroboration simply because the person named or described in the tip is found in the place the tipster specifies. *See J.L.,* 529 U.S. at 272, 120 S.Ct. at 1379.

In *Florida v. J.L.,* the Supreme Court declared unconstitutional an investigatory stop that was based solely on an anonymous tip that a young black male would be standing at a certain bus stop wearing a plaid shirt and carrying a gun. *Id.* at 268, 120 S.Ct. at 1377. Upon arriving at the particular bus stop, the police officers saw three black males, one of whom, J.L., was wearing a plaid shirt. *Id.* One officer approached J.L., frisked him, and found a gun, which resulted in J.L.'s arrest. *Id.*

---

1. Although the Commonwealth appears to argue that Officer Turner's interaction with Henson was not a seizure and that Henson validly consented to the search, this argument was never made at the trial court level. The Commonwealth's sole theory at the suppression hearing was that the stop of Henson was justified by Officer Turner's corroboration of the anonymous tip. Thus, this specific argument is not preserved for appellate review. *Commonwealth v. Hatcher,* 199 S.W.3d 124, 128 (2006); *Commonwealth v. Jones,* 217 S.W.3d 190, 199 (2006).

The U.S. Supreme Court ultimately agreed with J.L. that the anonymous tip was not reliable enough to justify his stop. In stressing why a tip that proves to be accurate may nonetheless fail to provide the necessary reasonable suspicion, the Supreme Court stated

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Id.* at 272, 120 S.Ct. at 1379. Before Officer Turner asked Henson to step outside the vehicle, the only basis for suspecting Henson of criminal activity was the anonymous tip, and the only corroborating evidence was that Henson was in fact found in the passenger seat of the Pontiac Grand Am. Although Henson's location in the vehicle matched what the tipster alleged, like the tip in *J.L.*, this prediction involved a "readily observable location" and did not "show that the tipster ha[d] knowledge of concealed criminal activity." *Id.* Without further investigation, observation, or prior knowledge of the suspect named in the tip, simply finding the individual where the tipster said he would be does not provide the necessary reasonable suspicion required by the Fourth Amendment to justify an investigatory stop.[2]

Moreover, this case is readily distinguishable from the circumstances in *Alabama v. White, supra,* where an anonymous tip was suitably corroborated and proved to be reliable enough to justify the investigatory stop. In *White,* an anonymous caller stated that Vanessa White would be leaving 235–C Lynwood Terrace in a brown Plymouth station wagon with a broken right taillight lens, that she would be going to Dobey's Motel, and that she would be carrying cocaine in a brown case. *White,* 496 U.S. at 327, 110 S.Ct. at 2414. In their subsequent investigation, the police observed White leave the 235 building of the Lynwood Terrace Apartments, enter the specific station wagon, and drive in the most direct route towards Dobey's Motel. *Id.* Before White reached the motel, the officers stopped her car, received consent to conduct a search, and ultimately found marijuana in the brown case and cocaine in her purse. *Id.* at 327, 110 S.Ct. at 2415. In finding that the tip was sufficiently reliable to justify the stop, the Supreme Court focused on the fact that the police were able to independently corroborate the details provided in the tip and that the anonymous caller was able to predict White's future behavior. *Id.* at 331–332, 110 S.Ct. at 2417.

In Henson's case, although the anonymous tip incorrectly stated that Greg Haddix would be driving the vehicle, Officer

---

**2.** In *Commonwealth v. Morgan,* —— S.W.3d —— (Ky.2008), this Court held that a similar anonymous tip possessed sufficient indicia of reliability to justify the stop of Christy Morgan and her companion, Guy Evans. However, in that case, the anonymous tip was corroborated by the investigating officer's knowledge of Morgan's and Evans's prior criminal records and their attempt to flee from the police. The officer who received the tip knew that Morgan and Evans had a history of drug related offenses and had previously personally arrested Morgan on a methamphetamine charge. Since the illegal activity alleged in Morgan's anonymous tip matched the suspects' prior records, the officer could rely on his knowledge of their criminal history in order to corroborate the tip. In addition, the suspects' attempt to leave the residence identified in the tip immediately after seeing a police officer drive by further corroborated the allegation that criminal activity was afoot.

Turner was nonetheless able to corroborate the presence of Henson in the passenger side of the black Pontiac Grand Am. However, since the tip did not provide any other details, such as where the car would be located or the suspects' destination or future actions there was nothing else for Turner to corroborate. In *White,* the Supreme Court concluded that "the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller." *Id.* at 332, 110 S.Ct. at 2417. Obviously, the tip in *White* included several more details for the police to corroborate than were contained in the tip in Henson's case: the tip included the specific apartment from which White would emerge, a timeframe for White's departure, the car she would be driving, and her destination. *Id.* at 327, 110 S.Ct. at 2414. The details that Officer Turner could corroborate in this case only included the names of two individuals and the type of car in which they would be riding. Thus, Turner's ability to substantiate that portion of the "bare bones" tip which might be readily observed by anyone traveling in Jackson that day—that Henson would be in Haddix's car—does not necessarily make the tipster's other allegation—that Henson had illegal drugs—more reliable.

Particularly noteworthy in this case is the absence of any predictive components about where Henson would be going or what he would be doing. The Supreme Court in *White* noted that if the tipster is able to predict the suspect's future behavior, then it is reasonable for police to believe that the other information provided in the tip regarding illegal activities is also reliable and accurate. *Id.* at 332, 110 S.Ct. at 2417. Because the tip in Henson's case lacked predictions about his future activities, Officer Turner had no way to verify or test the tip's reliability and thus, no

objective facts on which to base his reasonable suspicion. The Supreme Court's comparison of *White* to the facts in *J.L.* illustrates the inadequacy of the tip in Henson's case:

> The tip in the instant case lacked the moderate indicia of reliability present in *White* and essential to the Court's decision in that case. The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.

*J.L.,* 529 U.S. at 271, 120 S.Ct. at 1379. Similarly, the tip in Henson's case, which provided no predictive details about where the suspects would be or what they would be doing and no details indicating how the caller knew about the alleged drugs, lacks the needed reliability to justify an investigatory stop.

In finding that this anonymous tip did possess sufficient indicia of reliability, the Court of Appeals relied heavily on *Stewart v. Commonwealth,* 44 S.W.3d 376 (Ky.App. 2000). In *Stewart,* the police received an anonymous tip that Charles Stewart, along with his companion, Barbara Grubbs,

would be leaving Hopkinsville and arriving in Cadiz at approximately 10:00 p.m. after having purchased crack cocaine. *Id.* at 378. The tip stated that the couple would be traveling in Grubbs's vehicle and that Stewart would have the cocaine in his mouth. Subsequently, two Cadiz police officers located Grubbs's car as it drove into Cadiz from the direction of Hopkinsville sometime after 10:00 p.m. The couple eventually pulled into a convenience store and exited their vehicle. The police then approached Stewart and began questioning him. In response to the officer's question regarding what was in his waistband, Stewart voluntarily gave the officer a pill bottle he had placed there, which contained small samples of crack cocaine and marijuana. The officer then asked him to open his mouth and when Stewart complied, the officer discovered that Stewart had crack cocaine sticking to the roof of his mouth. Stewart was then arrested and charged with several drug offenses. *Id.*

The Kentucky Court of Appeals concluded in *Stewart* that because a substantial portion of the anonymous tip was independently verified by the police officers, including the specific names of the suspects, the car they would be in, and certain "futuristic or predictive information," the tip was sufficiently reliable. *Id.* at 381–382. Although the tip in this case is similar to that in *Stewart*—both tips name specific individuals and provide a description of their vehicle—the anonymous tip in this case did not contain any predictive information about Henson's activities. In *Stewart*, the officers corroborated the tip that Stewart and Grubbs were coming from Hopkinsville and arriving in Cadiz around 10:00 p.m. *Id.* at 378. The absence of a similar predictive component distinguishes the tip in Henson's case from *Stewart.* The Court of Appeals noted that *Stewart* was a "close question," but the tip in Henson's case "surely falls on the other side of the line." *Florida v. J.L.,* 529 U.S. at 271, 120 S.Ct. at 1379.

Because the stop of Henson was not based on articulable reasonable suspicion and was not in compliance with the Fourth Amendment, the seizure of drugs and hypodermic needles from Henson, despite his voluntarily surrendering the pill bottle to Officer Turner, was improper and this evidence should have been suppressed. The United States Supreme Court has expressly held that such an illegal stop or detention "taints" the subsequent consent, thus making the evidence seized inadmissible. *Florida v. Royer,* 460 U.S. 491, 507–08, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983); *See also Kotila v. Commonwealth,* 114 S.W.3d 226, 231 (Ky.2003) *abrogated on other grounds by Matheney v. Commonwealth,* 191 S.W.3d 599 (Ky.2006). In sum, Henson's alleged consent, which flowed directly from the illegal stop was invalid and cannot be a valid basis for admitting the evidence seized. *See Parks v. Commonwealth,* 192 S.W.3d 318, 330 (Ky.2006) (stating that "the fruits of even a consensual search must be suppressed if the search was conducted pursuant to an unlawful stop or detention").

## CONCLUSION

The anonymous tip in this case did not possess the level of reliability necessary to justify Officer Turner's stop of Henson. The tip provided neither specific details regarding Henson's location nor predictive information about his future behavior. This lack of specificity prevented Officer Turner from being able to verify the tip's reliability and allegation of criminal activity before he conducted the stop. Because the tip and Officer Turner's subsequent observations failed to provide a particularized, reasonable suspicion that Henson was engaged in criminal activity, the stop was improper and the evidence seized is inad-

missible. Accordingly, we reverse the Court of Appeals decision and remand this case for further proceedings consistent with this opinion.

All sitting, except MINTON and SCHRODER, JJ., LAMBERT, C.J., CUNNINGHAM, NOBLE, and SCOTT, JJ., ADDINGTON and MANDO, Special Justices, concur.