Siddeeq ABDUL–JALIL, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2009–CA–000487–MR.

Court of Appeals of Kentucky.

Oct. 15, 2010.

Bruce P. Hackett, Louisville, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Jeffrey A. Cross, Assistant Attorney General, Frankfort, KY, for appellee.

Before CAPERTON and WINE, Judges; LAMBERT,[1] Senior Judge.

*OPINION*

CAPERTON, Judge:

Siddeeq Abdul–Jalil (Abdul–Jalil) appeals the September 5, 2007, denial by the Jefferson Circuit Court of his motion to suppress evidence discovered during the execution of a warrant to search the car he was driving on May 24, 2006. Having reviewed the parties' arguments, the record, and the applicable law, we reverse and remand.

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

At 2:36 p.m. on May 24, 2006, the Louisville Metro Police Department (LMPD) received a call from an anonymous tipster who claimed to have information about the location of a handgun used in a recent homicide. According to the LMPD tip sheet, the anonymous caller gave a description of the suspected shooter as a black male who would be driving an older model Ford Crown Victoria. The caller stated that the car and the suspected shooter could be found at 2110 St. Xavier Street. The caller further specified that the handgun was still in the car and that a grey Chevy Astro sought in connection with the homicide could also be found at the aforementioned address.

In response to this tip, LMPD patrol officer Sean Hamilton (Officer Hamilton) set up surveillance of the residence located at the address given by the tipster. Approximately four hours passed between the time the tip was received and the arrival of the vehicle described by the tipster. Upon arrival at the residence,[2] Abdul–Jalil, the driver and lone occupant of the vehicle, entered the house, emerged a short time later and departed in the tan car described in the tip.[3] Officer Hamilton followed and stopped the car for traffic violations.[4] In the process of the stop, Officer Hamilton noticed the driver make some "furtive" or "overt" movement that seemed to suggest that the driver was attempting to hide something under the front passenger seat. Officer Hamilton then approached the car and requested appellant's license and registration. Upon returning to the vehicle, the officer requested consent to search the car, which appellant denied.

During the stop and after the denial of consent to search, Officer Hamilton had two phone conversations with Homicide Detective Gary Huffman. In these conversations Officer Hamilton expressed concerns that he was not able to arrest Abdul–Jalil for the traffic offenses. After the second conversation with Detective Huffman, Abdul–Jalil was removed from the car, and was told that the car was being impounded. Abdul–Jalil was allowed to leave on foot.

A warrant to search the car was issued based on a signed affidavit which reported the details of the anonymous tip as well as the observations of the officer. The execution of the search warrant resulted in the discovery of a handgun and various other items within the car including appellant's birth certificate.[5] A motion to suppress this evidence at trial was filed by Abdul–Jalil on May 21, 2007. This motion was denied by the Jefferson Circuit Court. After a mistrial due to the jury's inability to reach a verdict, Abdul–Jalil then entered a conditional plea of guilty reserving the right to appeal the trial court's denial of his motion to suppress.

■ Abdul–Jalil's motion to suppress asserted that the impoundment of the vehicle following the issuance of a citation for traffic violations violated his Fourth Amendment rights. In its order denying Abdul–Jalil's motion, the trial court stated that the corroboration of the information

2. The residence under surveillance was the home of the car's registered owner, Candrell Lainaer. Lainaer was also the mother of Abdul–Jalil's children.

3. The car described by the tipster as an "older model Crown Victoria" was actually a 1988 Lincoln Town Car.

4. Abdul–Jalil was given citations for excessive window tint and failure to use turn signal.

5. A High Point 9mm Luger was found in "plain view" between the driver and passenger seats. Subsequent ballistics tests of the weapon revealed that it was not involved in the homicide which had been mentioned in the tip.

contained in the anonymous tip concerning the description of the vehicle, the license number, the location and street address of the vehicle, and the description of the driver, coupled with the conduct of the Abdul–Jalil when stopped, were sufficient to establish probable cause when considered in the totality of the circumstances.

Abdul–Jalil argues that the initial stop lacked the exigency needed to justify the seizure of the car. Abdul–Jalil further argues that the anonymous tip lacked the predictive quality required by our jurisprudence, and that reliance on a tip which lacks sufficiently predictive information cannot be corroborated and is, therefore, lacking as a basis for probable cause to seize his property.

The Commonwealth counter-argues that given the totality of the circumstances, the trial court was correct in denying appellant's motion. In their brief to the court, the Commonwealth justifies the seizure of Appellant's vehicle by claiming that there was probable cause to believe that the weapon would be found in the car and that if the car had not been impounded on the spot, the evidence would probably have been lost or destroyed.

The Commonwealth also argues that the sufficiency of the affidavit upon which the search warrant was issued was not properly preserved for argument before this court. Whether this argument was preserved is of no consequence to our ruling today as we hold that the initial seizure of Abdul–Jalil's vehicle was unreasonable and in violation of the Fourth Amendment of the United States Constitution and Section Ten of the Kentucky Constitution. Therefore any evidence or information gained as a result of this seizure would be considered "the fruit of the poisonous tree" and should be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Our standard when reviewing a trial court's decision on a motion to suppress evidence is twofold. First, the factual findings of the trial court are conclusive if supported by substantial evidence.[6] *See* Kentucky Rules of Criminal Procedure (RCr) 9.78. Second, we conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law. *Commonwealth v. Neal,* 84 S.W.3d 920 (Ky.App.2002); *see also Nichols v. Commonwealth,* 186 S.W.3d 761 (Ky.App.2005).

Believing the issues pertaining to probable cause to be determinative, we shall address those first upon review.

The Fourth Amendment of the United States Constitution and Section Ten of the Kentucky Constitution prohibit unreasonable searches and seizures by police officers. *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998). The touchstone of all Fourth Amendment questions is "reasonableness." *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). The question for us then becomes, was the impoundment of Abdul–Jalil's vehicle reasonable under a Fourth Amendment analysis?

To serve as a basis for probable cause for search and seizure purposes, an anonymous tip must contain information which has at least moderate indicia of reliability, as well as predictive components which can be independently corroborated by police observations. *Henson v. Commonwealth,* 245 S.W.3d 745 (Ky.2008);

---

**6.** Substantial evidence means "[e]vidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, ... has sufficient probative value to induce conviction in the minds of reasonable men." *See Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003)(internal quotations omitted).

*Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The information to be corroborated cannot merely be information readily observable by any member of the general public and must "show that the tipster has knowledge of concealed criminal activity." *J.L.,* 529 U.S. at 272, 120 S.Ct. at 1379; *Henson,* 245 S.W.3d at 749.

The Commonwealth cites to the fact that the anonymous tipster identified the person who would be driving the car as a black male. The Commonwealth seems to equate this identification as determinative on the issue of the predictive nature of the anonymous tip. In *Florida v. J.L.,* 529 U.S. at 272, 120 S.Ct. at 1379, the United States Supreme Court cautioned against finding corroboration simply because the person named or described in the tip is found in the place the tipster specifies. The anonymous tip in *J.L.* stated that a young black male carrying a gun and wearing a plaid shirt could be found standing near a certain bus stop. Officers located the individual described in the tip and conducted a frisk of his person which resulted in the discovery of a firearm. The Court held an investigatory stop of an individual based solely upon police corroboration of details which were readily observable by any member of the public to be unconstitutional. Without further information for the police to corroborate, and without any behavior on the part of *J.L.* that would indicate to the police that he was committing or about to commit a crime, the tip, by itself, was insufficient to serve as a basis for a stop and frisk.[7]

In the case *sub judice* the tip lacked information that was adequately pre-

dictive, which Officer Hamilton could have corroborated to justify impounding the vehicle. Abdul–Jalil's movement across the center console did not corroborate any aspect of the anonymous tip, and certainly did not give rise to suspicion that evidence of a crime would be found anywhere in the car other than the area within his immediate control. Even with due consideration given to the naturally exigent nature of vehicles established in *California v. Acevedo,* 500 U.S. 565, 569, 111 S.Ct. 1982, 1987, 114 L.Ed.2d 619 (1991) (citing *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)), the impoundment of Abdul–Jalil's vehicle in this circumstance is constitutionally unreasonable.

It is true that the anonymous tipster in this case predicted that the person named in the tip would be found at the St. Xavier Street address as opposed to a tip that stated a person was currently at a certain address. This fact is essentially a non-issue considering the registered owner of the car lived at the address given and the driver of the car was the car owner's paramour. It is safe to assume that the car and driver in this case would eventually end up at the address given under normal circumstances. This tip, viewed in light of what the officer knew at the time of the impoundment, lacked enough information to give the officer a "reasonable basis for suspecting ... unlawful conduct" sufficient to warrant the immediate impoundment of Abdul–Jalil's car. *J.L.,* 529 U.S. at 271, 120 S.Ct. at 1379. The court in *J.L.* further explained that:

An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly

---

**7.** *J.L.* involves the propriety of a stop and frisk. This case involves an issue of improper seizure of property. The cases are analogous however in that the quality of an anonymous tip was at issue in both. Further, both cases involved an analysis of the totality of circumstances surrounding police action in response to an anonymous tip.

identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determined person. *Id.*, 529 U.S. at 272, 120 S.Ct. at 1379.

The United States Supreme Court in *Alabama v. White* considered the level of corroboration needed to establish the reliability of an anonymous tip. In *White*, the police received an anonymous tip which stated that a woman would be leaving an apartment at a specific time, in a specific car, and that the person would be headed to a specific motel. Police officers monitored the apartment and followed the suspect when she left the residence at the specified time and in the exact car described in the tip. When it was clear to the police that the car was headed to the motel, the suspect was stopped and the car was searched. In upholding the search and seizure, the Supreme Court stated that their decision turned on the fact that "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 245, 103 S.Ct. 2317, 2335, 76 L.Ed.2d 527 (1983)).

None of the information given by the tipster in this case shows that the tipster had special knowledge of Abdul–Jalil's future actions other than the fact that he would eventually bring the car he was driving back to the residence of the owner of the car. The tip did not specify any timeframe during which this event would occur. The phrase "future actions of third parties ordinarily *not easily predicted*" used by the Court in *White*, 496 U.S. at 332, 110 S.Ct. at 2417 is particularly pertinent to the case at bar. As was stated before, it would be difficult to determine how many people possessed the knowledge given by the anonymous tipster in this case considering the car was found at its registered owner's home, and was driven by the registered owner's paramour. The level of predictive information given in the tip falls short of demonstrating any particularized knowledge that would not be available to those simply living on or frequenting St. Xavier Street.

The Commonwealth cites *Wagner v. Commonwealth*, 581 S.W.2d 352 (Ky.1979), which lays out circumstances where a warrantless impoundment of a vehicle would be considered appropriate. Where this authority falls short in the case *sub judice* is the issue of probable cause. Nothing in the facts before us today would give a reasonable person in Officer Hamilton's situation probable cause to believe that the car contained evidence which would be lost or destroyed absent immediate impoundment. As we have discussed previously, the details of the anonymous tip which were corroborated by Officer Hamilton were not sufficiently predictive to show the special knowledge required to establish the indicia of reliability needed for probable cause to be found.

The trial court quotes language found in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), in its order denying Appellant's motion to suppress which states in part that constitutionally there is no difference between the seizure of an automobile for such time necessary to obtain a search warrant, and immediate impoundment. *Chambers* is good law but is misapplied to the case before us today. For the principal in *Chambers* to apply, probable cause must exist. As we have discussed, probable cause does not exist in the case at bar.

In the case of *Commonwealth v. Brown,* 250 S.W.3d 631 (Ky.2008), when faced with a Fourth Amendment issue the Supreme Court stated, "In examining this case as to the reasonableness of the officers' action, we must pause and ask ourselves this question. What should the officers have done differently?" *Id.* at 636. In the instant case, Officer Hamilton had other, more constitutionally sound, courses of action that could have been taken.

The seizure of the vehicle which Abdul–Jalil was driving was lacking probable cause and is, therefore, unconstitutional in light of the Fourth Amendment to the United States Constitution and Section Ten of the Kentucky Constitution. The exigencies inherent in cases dealing with automobile searches and seizures are present, but do not justify the actions taken by law enforcement in this case.

Wherefore, for the foregoing reasons, we hereby reverse and remand for additional proceedings not inconsistent with this opinion.

ALL CONCUR.