Garcia H. SIMPSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 91–CA–772–MR.

Court of Appeals of Kentucky.

April 24, 1992.

As Modified June 19, 1992.

Publication Ordered June 19, 1992.

Elizabeth A. Hill, Lexington, for appellant.

Chris Gorman, Atty. Gen., Michael L. Harned, Asst. Atty. Gen., Frankfort, for appellee.

Before LESTER, C.J. and EMBERTON and MILLER, JJ.

EMBERTON, Judge.

This is an appeal from a judgment convicting the appellant, Garcia H. Simpson, of trafficking in cocaine as well as being a persistent felony offender in the first degree. The appellant was subsequently sentenced to seven years in prison; the sentence then being enhanced to ten years. On appeal, the single issue is whether the trial court erred, as a matter of law, in failing to suppress evidence obtained as a result of a search of the appellant by a police officer. We affirm the trial court's ruling.

The substantive facts are that late in the afternoon of December 20, 1990, a Lexington police officer, James Gabbard, drove by the corner of Third and Race Streets in Lexington and observed the appellant standing on the corner. As a member of the narcotics unit of the Lexington Police Department, Officer Gabbard was specifically on the lookout for street-level drug deals as well as drug usage. At the time Officer Gabbard observed the appellant, he was meandering back and forth on the sidewalk as well as into a grocery parking

lot with no apparent purpose. The parking lot had a large sign which read, "No trespassing, no loitering under violation of KRS 511.080." As Officer Gabbard drove by the corner, the appellant focused his attention on the police car.

Approximately fifteen minutes later, Officer Gabbard again drove by the street corner and again observed the appellant walking back and forth. At this point, Officer Gabbard, together with Sergeant Bosse and Officer Sennett got out of the car and approached the appellant. They asked him what he was doing and why he was trespassing in violation of KRS 511.-080. Yet, the officers engaged the appellant only in casual conversation and did not attempt to restrain him. In fact, they testified that if the appellant had asked to leave he would have been able to do.so. Sergeant Bosse then asked the appellant for identification. Once the appellant handed the officer his drivers license, a radio check was made revealing an outstanding warrant for a traffic violation. As a result, the appellant was placed under arrest. Incident to the arrest, Officer Gabbard searched the appellant. In the appellant's right-hand jacket pocket he discovered a plastic baggie containing two small packages of cocaine. Eleven more such bags were found in his left-hand pocket. And, a three inch soda straw, commonly used to ingest cocaine, was also found. As a result of the search, the appellant was subsequently indicted for trafficking in cocaine, as well as being a persistent felony offender in the first degree.

Prior to the time of trial, the appellant moved to suppress the cocaine arguing that the search was illegal. The trial court overruled the motion, and the appellant was subsequently convicted. It is from such conviction that he now appeals.

Substantively, the appellant argues that any evidence obtained as a result of the search was illegally obtained given the fact that the police had no legitimate reason to stop and question him while he was standing on the street corner. Notwithstanding such argument, the trial court found that given the totality of the circumstances, the action of the police was justified and that the search was entirely proper.

When a pre-trial hearing on the issue of suppression is conducted to determine the admissibility of the evidence obtained during a search, a trial court's findings of fact are conclusive if they are supported by substantial evidence. RCr 9.78; *Davis v. Commonwealth*, Ky., 795 S.W.2d 942 (1990). Under the standard set forth by the court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer can subject anyone to an investigatory stop *if* he is able to point to some specific and articulable fact which, together with rational inferences from those facts, support "a reasonable and articulable suspicion" that the person in question is engaged in illegal activity.

Furthermore, as stated by the court in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), the question of whether there is "a reasonable and articulable suspicion" is a question of fact which must be determined in each situation from the totality of the circumstances. The question of what the totality of the circumstances were is crucial in evaluating whether the officers, in fact, did have a "reasonable and articulable suspicion" to stop the appellant.

Here, he argues that the officers did not have a sufficient basis to stop him simply because he was standing on a street corner in a high crime area. Although it is arguable that this by itself may not have been sufficient, it was only *one* factor involved. The officers specifically testified that the appellant was standing on a corner known to be frequented by drug traffickers and that he was meandering back and forth, both on the sidewalk and in the grocery parking lot, with no apparent reason. Furthermore, they stated that as they drove by the corner they noticed the appellant looking at them as they passed.

Officer Gabbard's purpose was to specifically search for street-level drug deals and drug usage. In the previous five months he had arrested fifty to one hundred drug dealers. He testified that he noticed that the appellant's activities mirrored those of

**688**

drug dealers with which he had been involved. Such factors, taken as a whole, constituted a sufficient basis for the officers having "a reasonable and articulable suspicion" that the appellant was, in fact, involved in criminal activity.

Other jurisdictions have ruled that simply being in a high crime area is a highly relevant factor upon which a police officer can rely in determining whether a defendant's activities are suspicious. See eg. *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Hall*, 525 F.2d 857 (D.C.Cir.1976). In *United States v. Magda*, 547 F.2d 756 (2nd Cir.1976), the court stated that the fact the defendant was in a narcotic-prone location when he was observed by police was a clear and articulable fact to be considered by the police in determining whether to stop him. Similarly, the court in *United States v. Holland*, 510 F.2d 453 (9th Cir.1975), stated that suspicious actions on the part of a defendant as the police drove by him can contribute to the establishment of an articulable suspicion.

Finally, the fact that the appellant's activity may have been as consistent with innocent activity as with illegal activity did not deprive the police from the ability to entertain a reasonable suspicion that criminal activity had, in fact, occurred. See *United States v. Gomez*, 776 F.2d 542 (5th Cir.1985); *People v. Wheeler*, 43 Cal. App.3d 898, 118 Cal.Rptr. 205 (1974).

Given the no trespassing sign in the parking lot, appellant was clearly trespassing and loitering and therefore clearly engaged in minor criminal activity. This alone would have justified Officer Gabbard in believing that the appellant was in violation of KRS 511.080. On this basis, it was permissible for the police to have stopped and questioned him.

The judgment below is affirmed.

LESTER, C.J., concurs.

MILLER, J., dissents.