**COMMONWEALTH OF KENTUCKY,**
**Appellant,**

v.

**LEON BANKS, Appellee.**

No. 2000–SC–0629–DG.

Supreme Court of Kentucky.

Oct. 25, 2001.

A.B. Chandler III, Attorney General, Todd D. Ferguson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellant.

V. Gene Lewter, Fayette County Legal Aid Inc., M. Shea Chaney, Lexington, Counsel for Appellee.

GRAVES, Justice.

At approximately 9:00 p.m. on Monday evening of September 9, 1996, two Lexington–Fayette Urban County Police Officers, James Bloomfield and Melissa Sedlaczek, were in the high crime area of Sixth Street and Elm Tree Lane in Lexington. While on foot patrol, they observed Appellee, Leon Banks, walking towards them through the front yard of an apartment building located at 563 Elm Tree Lane. A "No Trespassing" sign was posted in the yard. Because they were experienced in patrolling the area, the officers were familiar with many of the apartment complex residents; however, they did not recognize Appellee. Upon seeing the police officers, Appellee stopped, quickly put his hands in his pocket, turned, and then began to walk in a direction away from the officers. After taking a few steps, he stopped again. Both officers testified that Appellee appeared startled.

As the officers approached Appellee, Officer Bloomfield noticed a bulge in Appellee's pocket. Officer Bloomfield then asked Appellee to remove his hands from his pockets. Appellee obeyed but a bulge remained in Appellee's pocket. Suspecting that the "bulge" may be a weapon, Officer Bloomfield conducted a pat-down search. During the frisk, Officer Bloomfield concluded that the object in Appellee's pocket was probably drug paraphernalia rather than a weapon. Officer Bloomfield asked if the object was a crack pipe. Appellee said that he did not know. Officer Bloomfield then asked for permission to remove the object from Appellee's pocket. Appellee consented to removal of the object and Officer Bloomfield removed a crack pipe from Appellee's pocket. Appellee was then arrested. The officers searched Appellee incident to arrest, and discovered rolling papers in Appellee's wallet, another crack pipe, and two rocks of crack cocaine.

After his motion to suppress the evidence in the Fayette Circuit Court was denied, Appellee entered a conditional guilty plea to first-degree possession of a controlled substance and possession of drug paraphernalia. He received a one year sentence. On appeal, the Court of Appeals vacated the sentence and remanded the case to the Fayette Circuit Court for factual findings pursuant to RCr 9.78. The Fayette Circuit Court thereafter entered an Opinion and Order denying Appellee's motion to suppress. Appellee entered another conditional guilty plea to possession of a controlled substance in the first degree and possession of drug paraphernalia, and again received a one year sentence.

On the second appeal, the Court of Appeals reversed the sentence and held that the police officers did not have articulable suspicion to warrant a stop and frisk of Appellee according to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This Court granted the Commonwealth's motion for discretionary review. After hearing oral arguments and reviewing the record, we reverse the Court of Appeals.

■ This case presents another application of the United States Supreme Court's decision in *Terry v. Ohio, supra*. In *Terry*, the Court ruled that even absent probable cause a police officer may stop and frisk a suspect for weapons if the officer can point to reasonable and articulable facts that indicate that criminal activity may be afoot, and the suspect may be armed and dangerous. *Id.* at 21, 88 S.Ct. at 1880. With regard to the factual findings of the trial court "clearly erroneous" is the standard of review for an appeal of an order denying suppression. However, the ultimate legal question of whether there was reasonable suspicion to stop or probable cause to search is reviewed de novo. *Ornelas v. United States,* 517 U.S. 690, 691, 116 S.Ct. 1657, 1659, 134 L.Ed.2d 911 (1996).

The facts in this case are not in dispute. The sole issue is whether the officers had articulable suspicion that criminal activity may have been afoot and that Appellee may have been armed and dangerous so as to justify the stop and frisk. Appellee argues that the frisk conducted by the officers was illegal because there was not sufficient articulable suspicion for the officers to believe that he was engaging in criminal activity. The Commonwealth cites *Simpson v. Commonwealth,* Ky.App., 834 S.W.2d 686 (1992), to support the argument that Appellee's activity was sufficient for the officers to stop and frisk him.

## I. THE STOP AND FRISK

■ The first issue to be addressed is a determination of when the seizure, or the stop, of Appellee occurred. A seizure

requires an articulable suspicion that criminal activity is afoot. The seizure of Appellee *did not occur* when the officers approached him. *Baker v. Commonwealth,* Ky., 5 S.W.3d 142, 145 (1999), *citing Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). Police officers are free to approach anyone in public areas for any reason. Officers are entitled to the same freedom of movement that the rest of society enjoys. Likewise, the seizure of Appellee did not occur when Officer Bloomfield requested him to remove his hands from his pockets, since the request was merely a safety precaution. *Baker, supra,* at 145. If Appellee had not agreed to remove his hands from his pockets and the officer had ordered that Appellee remove his hands, there would have been a seizure. *Id.* Consequently, the seizure of Appellee did not occur until Officer Bloomfield frisked him.

■ When Officer Bloomfield seized Appellee, he had reasonable suspicion to believe that Appellee may be engaging in criminal activity. Appellee was in a high crime area.[1] He was present on the property of an apartment complex where a "No Trespassing" sign was posted. The officers did not recognize Appellee as a resident of the complex with which they were familiar. The officers approached Appellee, and he appeared to be startled. Appellee then attempted to turn and evade the officers by walking in the opposite direction.[2] Then, after Appellee took a few steps away from the officers, he instantly stopped. These facts justified the

officers' belief that Appellee may have been engaging in criminal activity. The fact that Appellee took his hands out of his pockets and a bulge still remained in one pocket, gave rise to a reasonable belief that he may have been armed and dangerous. Under the totality of the circumstances, Officer Bloomfield was justified in stopping and frisking Appellee.

This case resembles *Simpson, supra.* In *Simpson,* the Court of Appeals held that the officers did have reasonable and articulable suspicion to stop the defendant where the defendant was in a high crime area, was meandering back and forth, was looking at the officers when the officers drove by, and was trespassing and loitering. *Id.* at 688. The Court in *Simpson* further held that a person can be stopped and questioned even if the individual is only engaging in minor criminal activity such as trespassing and loitering. *Id.* at 688.

■ The Court of Appeals distinguished this case from *Simpson* by noting that the officers did not know for sure whether Appellee was trespassing. Although there was a "No Trespassing" sign in the yard of the complex, the Court reasoned that the officers could not have known that Appellee was not a resident. However, the test for a *Terry* stop and frisk *is not* whether an officer can conclude that an individual is engaging in criminal activity, but rather whether the officer can articulate reasonable facts to suspect that criminal activity *may* be afoot and that the suspect *may* be armed and

---

1. In *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), the United States Supreme Court stated that an individual's presence in a high crime area may be considered as a factor in deciding whether an officer can conduct a *Terry* stop. However, the mere instance of being in a high crime area, without any more articulable facts is insufficient to justify such a stop.

2. In *Wardlow,* the Supreme Court also stated that evasive behavior can be a factor in deciding whether a suspect may be engaging in criminal activity. *Id.,* at 124, 120 S.Ct. at 676.

dangerous. *Terry, supra,* 392 U.S. at 30, 88 S.Ct. at 1884–1885 (emphasis added). The totality of the circumstances must be evaluated to determine the probability of criminal conduct, rather than the certainty. *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). As the Supreme Court held in *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), the level of articulable suspicion necessary to justify a stop is considerably less than proof of wrongdoing by preponderance of the evidence.

Since the yard of the apartment complex had a "No Trespassing" sign and the officers did not have any reason to believe that Appellee was a resident, reasonable facts existed for the police to conclude that he may be trespassing. The additional facts that Appellee was in a "high crime" area, appeared startled when he saw the officers, attempted to move away from them, and then stopped abruptly, created additional articulable facts for the officers to reasonably suspect that Appellee may be engaging in criminal activity. The fact that Appellee had a bulge in his pocket, even after he removed his hands, further justified the officers' concern that he might be armed and dangerous. Therefore, the officer did not violate Appellee's rights when he stopped and frisked him.

### THE REMOVAL OF THE CRACK PIPE

The second issue is whether Officer Bloomfield received permission to remove the crack pipe from Appellee's pocket after he realized that the object was not a weapon. Frisking a suspect during a *Terry* stop is strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. *Commonwealth v. Crowder,* Ky., 884 S.W.2d 649 (1994), *citing*

*Terry, supra; see also Michigan v. Long,* 463 U.S. 1032, 1049, and 1052, n. 16, 103 S.Ct. 3469, 3480–3481, and 3482, n. 16, 77 L.Ed.2d 1201 (1983); *Ybarra v. Illinois,* 444 U.S. 85, 93–94, 100 S.Ct. 338, 343–344, 62 L.Ed.2d 238 (1979). However, the plain feel exception to this rule allows for the discovery of non-threatening contraband if the contraband is immediately apparent from the sense of touch while the suspect is lawfully frisked. *Crowder, supra,* at 651, *citing Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Thus, if non-threatening contraband is immediately apparent to the officer from the sense of touch while the officer is conducting a lawful pat-down search, the officer is not required to ignore the contraband and can lawfully seize it. *Crowder, supra,* at 651.

In the case at hand, the crack pipe was immediately apparent to the officer while he was conducting a lawful pat-down of Appellee. Moreover, the Court of Appeals, the Commonwealth, and Appellee all concede that Appellee gave the officer permission to remove the crack pipe from Appellee's pocket. Therefore, the officer lawfully removed the crack pipe from Appellee. The other incriminating evidence against Appellee, which included another crack pipe, rolling papers, and two rocks of crack cocaine, was lawfully discovered during the search incident to his arrest. Thus, Appellee's rights were never violated.

For the above mentioned reasons, the decision of the Court of Appeals is reversed and the judgment of the Fayette Circuit Court is reinstated.

All concur.