Christopher **PITCOCK**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 2007–CA–002014–MR.

Court of Appeals of Kentucky.

June 12, 2009.

Ordered Published July 31, 2009.

Discretionary Review Denied by Supreme Court Oct. 21, 2009.

Julia K. Pearson, Assistant Public Advocate, Frankfort, KY, for Appellant.

Jack Conway, Attorney General of Kentucky, Jeffrey A. Cross, Assistant Attorney General, Frankfort, KY, for Appellee.

Before DIXON and KELLER, Judges; KNOPF,[1] Senior Judge.

## OPINION

KNOPF, Senior Judge (Assigned).

Christopher Pitcock appeals the October 2, 2007, Barren Circuit Court judgment sentencing him to two years of imprisonment for his conditional guilty plea to one count of unlawful possession of methamphetamine precursor. Pursuant to his conditional plea, Pitcock also appeals the circuit court's September 12, 2007, denial of his motion to suppress certain evidence. Because we find no error, we affirm.

On March 19, 2006, Pitcock purchased products from Walgreens containing 5.76 grams of pseudoephedrine. The next day, Pitcock purchased products from K–Mart containing 4.80 grams of pseudoephedrine, for a total purchase of 10.56 grams. The purchases were discovered by Barren County Drug Task Force detectives when checking the pharmacy logs for these two locations, pursuant to KRS 218A.1446, which requires anyone receiving such a product to show a government issued identification and to sign a store log. On July 12, 2006, Pitcock was indicted for unlawful possession of methamphetamine precursor, pursuant to KRS 218A.1437, which provides that possession of a drug product containing more than nine grams of ephedrine, pseudoephedrine, or phenylpropanolamine within a thirty-day period constitutes *prima facie* evidence of the intent to use the product as a precursor to methamphetamine or other controlled substance.

On August 29, 2007, Pitcock's attorney filed a motion to suppress the two pharmacy logs, arguing that KRS 218A.1446 was unconstitutional. The trial court denied the motion, and Pitcock subsequently pled guilty to the charge of unlawful possession of a methamphetamine precursor on the condition that he be allowed to appeal the court's ruling on the suppression issue. On October 2, 2007, the Court entered a final judgment, noting the conditional plea of guilty and sentencing Pitcock to two years of imprisonment, probated for a period of two years, subject to certain conditions of supervision. This appeal followed.

Our standard of review on a motion to suppress is bifurcated. We accept those findings of fact which are supported by substantial evidence. *Simpson v. Commonwealth,* 834 S.W.2d 686, 687 (Ky.App. 1992). We review *de novo* the legal application of pertinent constitutional principles to the facts as found. *Commonwealth v. Banks,* 68 S.W.3d 347, 349 (Ky.2001), *citing Ornelas v. United States,* 517 U.S. 690, 691, 116 S.Ct. 1657, 1659, 134 L.Ed.2d 911 (1996). At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court. *Commonwealth v. Whitmore,* 92 S.W.3d 76, 79 (Ky.2002).

On appeal, Pitcock makes several arguments, the first several of which attack the constitutionality of KRS 218A.1446. Those arguments are: 1) KRS 218A.1446(3)(b) is invalid on its face; 2) KRS 218A.1446(5) is unconstitutional on its face; and 3) KRS 218A.1446 serves only a law enforcement purpose.

KRS 218A.1446(3) and (5) state:

(3) A log, as described in subsection (2) of this section, shall be kept of each day's transactions. The registered pharmacist, a pharmacy intern, or a pharmacy technician shall initial the en-

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

try of each sale in the log, evidencing completion of each transaction. The log shall be:

(a) Kept for a period of two (2) years;

(b) *Subject to random and warrantless inspection by city, county, or state law enforcement officers;* and

(c) An electronic recordkeeping mechanism may be required in lieu of the written log or record described in subsection (2)(b) of this section if the costs of establishing and maintaining the mechanism are borne by the Commonwealth of Kentucky. Pursuant to administrative regulations promulgated by the Drug Enforcement and Professional Standards Branch and the Office of Drug Control Policy, pharmacies requesting an exemption to electronic reporting may file an exemption request to the above listed agencies. Any exemption may be granted upon a showing of imposition of additional cost by the pharmacy.

(5) No person shall purchase, receive, or otherwise acquire any product, mixture, or preparation or combinations of products, mixtures, or preparations containing more than nine (9) grams of ephedrine, pseudoephedrine, or phenylpropanolamine, their salts or optical isomers, or salts of optical isomers within any thirty (30) day period provided this limit shall not apply to any quantity of product, mixture or preparation dispensed pursuant to a valid prescription. In addition to the nine (9) gram restriction, no person shall purchase, receive, or otherwise acquire more than three (3) packages of any product, mixture, or preparation containing ephedrine, pseudoephedrine, or phenylpropanolamine, their salts or optical isomers, or salts of optical isomers during each transaction.

(Emphasis added).

 Pitcock argues that KRS 218A.1446 permits unlawful warrantless searches, in violation of the Fourth Amendment of the United States Constitution and § 10 of the Kentucky Constitution, which make such searches and seizures unconstitutional without probable cause. It appears that the constitutionality of KRS 218A.1446 is an issue of first impression.

It is uncontroverted that a statute is presumed to be constitutional unless it clearly offends the limitations and prohibitions of the Constitution. The one who questions the validity of an act bears the burden to sustain such a contention.

*Commonwealth v. Harrelson,* 14 S.W.3d 541, 547 (Ky.2000) (citation omitted).

The test of the constitutionality of any statute is whether it is unreasonable or arbitrary. A statute is constitutional if a reasonable and legitimate public purpose for it exists. The rational basis argument can be paraphrased as "Is there a good reason to adopt a law?" ... The legislature has broad discretion to determine what is harmful to the public health and welfare.

*Id.* at 548 (citations omitted).

In its order upholding the constitutionality of KRS 218A.1446, the trial court stated:

Statutes providing for random and warrantless inspection by police are not new. In 1942, the Kentucky General Assembly enacted what is now codified as KRS 226.040 and 226.070. These statutes require pawnbrokers to maintain a register of all items pawned including the recording of names and dates and a description of the item. The register is required to be ... "open to inspection of any officer of this state." Clearly the purpose of this statute was

to deter the pawning of stolen items and/or to "catch a thief."

The statute now before the Court is intended to deter the manufacturing of methamphetamine. Since the effective date of this law, the Court has observed a decline in meth manufacturing cases. The statute serves a legitimate public purpose.

■ We agree with the trial court's application of the law to the facts before it. KRS 218A.1446(5) prohibits the purchase of more than nine grams of a product containing pseudoephedrine in a thirty-day period. One of the most popular brands of such a product is Sudafed Maximum Strength, which contains thirty milligrams of pseudoephedrine in each pill. In order to exceed the legal limit, a person would have to purchase more than three hundred pills in a thirty-day period. As determined by the General Assembly, given the prevalence and severity of methamphetamine production and its effects on both individuals and society, we believe that a purchase limit of so high a quantity is neither constitutionally unreasonable nor arbitrary. Accordingly, Pitcock's constitutional challenge of the statute fails.

■ Pitcock also argues that KRS 218A.1446 serves only a law enforcement purpose and therefore fails to meet constitutional muster as set out in *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). The facts of *Burger* involved a junkyard owner who was charged with possession of stolen property and unregistered operation as a vehicle dismantler after a warrantless inspection of his junkyard. The statute allowing for the search also required that junkyard owners maintain particular licenses and records as to the vehicles and vehicle parts found in their possession. *Id.*

The United States Supreme Court held that searches made pursuant to the statute in question fell within an exception to the warrant requirement for administrative inspections of closely regulated businesses. The Court held that the operation of a junkyard met the definition of a closely regulated business and that the exception had been met because: 1) the state had a substantial interest in regulating the industry due to an increase in vehicle theft and the association of theft with the industry; 2) regulation of the industry reasonably served the substantial interest of eliminating automobile theft and the warrantless inspections worked to further that interest; and 3) the statute provided a constitutionally adequate substitute for a warrant by implementing the time, place, and scope of inspections. The Court also concluded that the statute was not a constitutional violation because it was "designed simply to give the police an expedient means of enforcing penal sanctions for possession of stolen property," and it permitted the State to address a major social problem both by administrative means and through penal sanctions for failure to comply with those means. *Id.* at 699–712, 107 S.Ct. 2636 *(internal quotations omitted)*.

Pitcock applies the holdings of *Burger* to the case *sub judice* through the use of *Williams, M.D. v. Commonwealth*, 213 S.W.3d 671 (Ky.2006), arguing that KRS 218A.1446 only serves a law enforcement purpose. In *Williams*, the appellant, a doctor, had been subject to a warrantless search of his office which eventually led to his conviction of four counts of unlawfully prescribing a controlled substance. The Supreme Court of Kentucky, in *Williams*, failed to extend the exception found in *Burger*, stating:

> [e]ven if we were to presume that the medical profession is a "closely regulated industry" for the purposes of conducting warrantless searches of private physicians' offices and medical files, the

Commonwealth has failed to make any credible showing that the search in this case was conducted for an administrative rather than law enforcement purpose. Accordingly, the *Burger* exception is not applicable.

*Williams,* 213 S.W.3d at 675–76 *(footnote omitted).*

The facts of *Williams* and *Burger* are distinguishable from the case before us because there is no showing that the pharmacies where Pitcock made his purchases objected to the search of its records. In *Williams* and *Burger,* the property searched, a junkyard and medical office, were the property of those challenging the search: the junkyard owner and the doctor. However, Pitcock has no proprietary interest in the records of the pharmacy and therefore his argument is without merit.

▮▮▮ Pitcock's next, and final argument: that the trial court erred by finding that Pitcock lacked standing to challenge the evidence presented as a result of the search of the pharmaceutical records.

To have standing to contest a search and seizure, an individual must possess a legitimate expectation of privacy in the area searched or property seized. The United States Supreme Court has developed a two-step analysis for determining whether a legitimate expectation of privacy exists:

"[W]hether the individual has exhibited a subjective expectation; and whether such subjective expectation, viewed objectively, is justifiable under the circumstances."

*Garcia v. Commonwealth,* 185 S.W.3d 658, 666 (Ky.App.2006) (citations omitted). Pit-

cock argues that he has an expectation of privacy in the pharmacy logs as medical records protected under HIPAA[2] and Protected Health Information covered by pharmaceutical privacy policies. We disagree. The purchase of over-the-counter pharmaceuticals is not health information intended to remain protected. Over-the-counter[3] medications are dispensed in clearly-marked boxes indicating their contents to the public. Prescription medications, on the other hand, are dispensed in closed bags hiding their contents. KRS 218A.1446 clearly pertains to the distribution of nonprescription medications and contains language specifically exempting the statute from applying to products dispensed as a result of a prescription. Furthermore, persons purchasing the over-the-counter medications, regulated by the statute, in essence consent to the statute by producing identification and signing that they received the product. There is no doctor-patient interaction involved in receiving these medications, and we do not believe that they fall under the scope of protected health information any more than the purchase of over-the-counter antacids, pain relievers, or allergy medications. Accordingly, we agree with the trial court that Pitcock has failed to show an expectation of privacy in the purchase of these products and has thus failed to establish that he has standing to challenge the evidence submitted.

For the foregoing reasons, the judgment of the Barren Circuit Court is affirmed.

ALL CONCUR.

**2.** Health Insurance Portability and Accountability Act.

**3.** The Court recognizes that most of the products containing the regulated ingredients in

KRS 218A.1446 are kept behind a pharmacy counter. The term "over-the-counter" refers to those medications commonly distributed without a valid prescription.