# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 17, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0268-MR

DARRELL BROWN                                                 APPELLANT


                   ON APPEAL FROM HARDIN CIRCUIT COURT
V.                        HONORABLE KEN M. HOWARD, JUDGE
                              NO. 18-CR-00623


COMMONWEALTH OF KENTUCKY                             APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>REVERSING IN PART AND AFFIRMING IN PART</u>**


A Hardin Circuit Court jury convicted Appellant, Darrell Brown, of first-degree trafficking in a controlled substance (methamphetamine, less than two grams), possession of marijuana, possession of drug paraphernalia, first-degree bail jumping and found him to be a first-degree persistent felony offender (PFO). The trial court sentenced Appellant to twenty-years' imprisonment in accordance with the jury's recommendation. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

On appeal, Appellant claims the trial court erred by: (1) denying his motion to suppress evidence; (2) allowing the admission of unqualified, prejudicial, and irrelevant testimony; and (3) allowing his conviction for first-degree bail jumping. Because officers impermissibly extended the stop, we reverse the trial court's judgment in part as the trial court erred by denying

Appellant's motion to suppress; therefore, we reverse all convictions relying on that evidence (trafficking in a controlled substance, possession of marijuana, and possession of drug paraphernalia). Otherwise, we affirm.

## I. BACKGROUND

At almost midnight, grocery store employees called police asking officers that they check on Appellant's car in the public parking lot. In the call, the store employees stated the lights were on in Appellant's vehicle, and it had been there a few hours. When police arrived, they knew the store was closed. Officers observed Appellant's car in the parking lot with the engine running. Officers noticed loose tobacco, and saw Appellant leaning over the center console, "with his arms wrapped up like he was laying on his arms." Officers knocked on the window, and after approximately six-seconds, Appellant rolled the window down.

After speaking to Appellant, police took his driver's license back to the police cruiser to check his driver's status and determine if he had any outstanding warrants. Officers learned Appellant had a similar encounter with officers approximately two weeks prior when he was also sitting in his car while waiting on his girlfriend. After running Appellant's license, police re-approached Appellant's car and ordered him to exit the vehicle pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). Once out of the car, Appellant consented for police to search his person.

Officers then ordered Appellant to the front of the police cruiser for further questioning. Police testified they did not smell alcohol, marijuana, or

2

meth during the interaction. Appellant told police he was waiting on a call from his girlfriend so he could go to her house after work but had fallen asleep in the car. When asked about the loose tobacco, Appellant told police he rolls his own cigarettes, explaining it is cheaper.

After some time, police requested permission to search Appellant's car, but he refused. Police acknowledged the refusal, and ordered Appellant to wait at the front of the police cruiser, away from his car, while officers looked around the exterior of the car, peering inside at different angles with a flashlight. Eventually, police noticed marijuana in the floorboard and called Appellant over, who confirmed the identity of the substance in the baggie. Police subsequently searched Appellant's car, where they found drug paraphernalia, methamphetamine, and marijuana. Officers arrested Appellant after finding the drugs.

While on bond, Appellant failed to appear for his preliminary hearing and the trial court issued a warrant. After officers arrested Appellant, a grand jury indicted him for first-degree trafficking in a controlled substance (methamphetamine, less than two grams), possession of drug paraphernalia, possession of marijuana, first-degree bail jumping, and first-degree persistent felony offender.

Appellant filed a motion to suppress evidence related to the police search, arguing the search and seizure violated his rights pursuant to the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution. After a hearing, the trial court denied the motion. It

found the police were performing a welfare check, and, alternatively, that the officers had reasonable suspicion of criminal activity. Further, the trial court found police did not unlawfully extend the stop.

Before trial, Appellant filed a motion to exclude a detective's testimony, or alternatively, to have a hearing to determine whether the detective was qualified to testify as an expert. The trial court found the detective was qualified to testify. During trial, Appellant argues the Commonwealth elicited testimony from its witnesses that implied the felony status of Appellant, although Appellant did not testify. After the jury trial, Appellant was convicted of all charges and sentenced to twenty years' imprisonment. This appeal followed.

## II. ANALYSIS

### A. Motion to suppress

"When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a de novo standard of review for conclusions of law." *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)).

With respect to the trial court's factual findings, Appellant argues the trial court erred in finding the officers had reasonable suspicion for the stop. After reviewing the record, we conclude there was no clear error in these factual findings of the trial court. A finding of fact is clearly erroneous only if it is manifestly against the great weight of the evidence. *Frances v. Frances*, 266

4

S.W.3d 754 (Ky. 2008). Appellant presents no argument that amounts to findings that are manifestly against the weight of the evidence. Rather, Appellant takes issue with *de minimu*s wording used by the trial court, such as its use of "several hours," as opposed to "a couple hours," and its finding Appellant was "slumped over," when an officer's testimony was that he did not "want to say [Appellant] was slumped over, but he was kind of laying over the center console . . . ." Last, Appellant disagrees with the finding Appellant was at first not responsive and "finally" responded, as opposed to what the Appellant characterizes as that it only "took six seconds," and that the loose tobacco was found on the dashboard, as opposed to the window sill. After review, we hold the factual findings are not clearly erroneous; thus, the trial court's factual findings are conclusive.

We next turn to whether the trial court erred when it applied the facts of this case to the law of the Commonwealth. We make this determination de novo—affording no weight to the trial court's determinations. *Jackson*, 187 S.W.3d at 305. This issue turns on whether the Fourth Amendment of the United States Constitution or Section 10 of the Kentucky Constitution were violated. Both "protect the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998). These "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

5

"It is fundamental that all searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be made pursuant to a valid warrant." *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky. 1992) (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971)).

### 1. *Initial Police Approach*

As to the initial police approach, it is well-established that "[p]olice officers are free to approach anyone in public areas for any reason. Officers are entitled to the same freedom of movement that the rest of society enjoys." *Commonwealth v. Banks*, 68 S.W.3d 347, 350 (Ky. 2001). When a police officer simply approaches someone, it is not a seizure. *Id.* at 350 (citing *Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky. 1999)). Therefore, when the police approached Appellant in a public parking lot, it was not a seizure and did not require the police to have reasonable suspicion.

As noted, the trial court found the police approached Appellant to conduct a welfare check as community caretakers, which also does not require reasonable suspicion. "[F]or the community caretaking function to apply there must be some specific and articulable facts that would lead the officer to reasonably believe the citizen is in need of assistance." *Poe v. Commonwealth*, 169 S.W.3d 54, 58 (Ky. App. 2005). Here, the trial court found Appellant was in a parking lot, slumped over and asleep at the wheel with the vehicle running. Those facts, combined with the call from the store, make it clear

6

police could approach and check on Appellant.  As such, the initial police approach and interactions with Appellant were constitutional.

## 2. *Seizure*

Following United States Supreme Court precedent, this Court has reiterated "a person has been seized when, in view of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Baker*, 5 S.W.3d at 145 (citing *United States v. Mendenhall*, 446 U.S. 544 (1980)).  We further reiterated the factors from *Mendenhall*, "such as the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*  In *Baker*, we held a police officer's "direct order for Appellant to remove his hands from his pockets must be interpreted as a show of authority which, we believe, would compel a reasonable person to believe he was not free to leave." *Id.* at 145.

After the initial interaction in this case, officers checked Appellant's driver's license at the police cruiser, re-approached and ordered Appellant to step out, turn around, and face the car.  Appellant complied, and as soon as he started getting out of the vehicle, an officer put his hands on Appellant's body and asked if Appellant had anything that would poke or stick him or if he had any weapons.  Appellant answered in the negative.  The officer then asked Appellant if he could search his person, and Appellant contemporaneously started to put his arms down to his sides.  The officer immediately told

Appellant "no," that he could not put his arms down. At this point, Appellant agreed to the pat down, and the police did not find anything on Appellant's person.

The trial court held this whole interaction was part of the initial "welfare check" on the Appellant. The trial court also found that, in the alternative, officers had reasonable suspicion for the investigation, which precludes the need for either Appellant's consent or the welfare check justification. "Under *Terry*, a law enforcement officer may briefly stop and detain an individual for investigative purposes if he has a reasonable suspicion supported by articulable facts that 'criminal activity may be afoot,' even if he lacks probable cause." *United States v. Bailey*, 302 F.3d 652, 658 (6th Cir. 2002) (quoting *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998)).

The police had received a call from the store that Appellant had been out in the parking lot for a while, and his vehicle was running with its headlights on. During the call, store employees did not advise the officers that Appellant was trespassing, as it was undisputedly a public parking lot. However, after officers arrived, they noticed Appellant appeared to be asleep, he was possibly slumped over, the vehicle was running, and that loose tobacco was present (which police testified could be indicative of drug use). While any of these factors alone may have not been enough to amount to reasonable suspicion, the combination of them was sufficient. As such, officers had reasonable suspicion supported by articulable facts to briefly investigate Appellant. Officers briefly questioned Appellant and detained him while they checked his

8

driver's license. During that investigation, officers learned Appellant had previously been investigated by police while sitting in his car approximately two weeks earlier. Next, police re-approached Appellant's vehicle, ordered him to step out of the car, and performed a frisk, which the trial court found was consensual.

At that time, the reasonable suspicions of the police should have been satisfied, as one of the officers even testified they had no evidence Appellant had broken any laws. Thus, Appellant should have been free to leave, and the police had no authority to continue Appellant's detention without something more—which police conceded they did not have.

### 3. *Extension of Stop*

"[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). Thus, the "controlling rule is that a vehicle stop may last no longer than is required to accomplish the purpose of the stop." *Turley v. Commonwealth*, 399 S.W.3d 412, 423 (Ky. 2013).

As noted, after police briefly investigated Appellant—which involved questioning, checking his driver's information and criminal/warrant background, removing him from the vehicle, and even consensually frisking his person—he should have been free to leave. That was enough time to accomplish the purpose of the stop, and officers could not constitutionally prolong the seizure past the time necessary to complete their initial purpose.

9

However, even if we agreed with the trial court that the "mission" of the police was to perform a welfare check on Appellant to ensure he was okay, that certainly should have been completed prior to performing the above-mentioned tasks. Officers had gathered enough information to ensure Appellant was not intoxicated, unconscious, in need of assistance, or otherwise suffering from a medical emergency—all which satisfied the purpose for the initial interaction. Further, officers testified Appellant had not broken any laws, and nothing occurred to create new reasonable suspicion to extend Appellant's seizure.

In spite of the fact officers had accomplished the purpose of the initial stop, they ordered Appellant to the front of the police cruiser, continued questioning him, and eventually asked to search his vehicle. Appellant refused to consent to the search, and police acknowledged this lack of consent. An officer then told Appellant to wait at the front of the cruiser while he searched around the exterior of Appellant's vehicle. The officer walked around Appellant's vehicle while holding his flashlight up to the windows and maneuvering his body position to enable him to see from different angles inside Appellant's vehicle. Eventually, the officer spotted a bag of marijuana on the floorboard and called Appellant over to confirm its presence. After subsequently searching Appellant's vehicle, police found more drugs and contraband.

Appellant characterizes the officers' search as "a fishing expedition," and we must agree. This was an unconstitutional extension beyond the initial purpose of the interaction, as it was not supported by any new reasonable

10

suspicion to support the extension. Once the police ordered Appellant to the front of the police cruiser for additional questioning and further ordered Appellant to wait there while he performed a walk-around search of Appellant's vehicle, it was no different than the police extending a stop to allow for a police dog sniff. In *Davis v. Commonwealth*, this Court reiterated United States Supreme Court precedent that a police dog sniff is not a normal part of a traffic stop, and if a traffic stop is prolonged for that purpose, it is unlawful. 484 S.W.3d 288, 293 (Ky. 2016) (citing *Rodriguez*, 575 U.S. at 354-55).

There are times when police can extend a stop for such a purpose. "In order to extend a stop beyond the time required to complete its initial purpose, something must occur during the stop to create a 'reasonable and articulable suspicion that criminal activity is afoot.'" *Mitchell v. Commonwealth*, No. 2019-SC-0087-DG, 2020 WL 6390276, at *4 (Ky. Oct. 29, 2020) (quoting *Turley*, 399 S.W.3d at 421). However, "[i]f the traffic stop is prolonged beyond the time required for the purpose of the stop, 'the subsequent discovery of contraband is the product of an unconstitutional seizure.'" *Davis*, 484 S.W.3d at 292 (quoting *Epps v. Commonwealth*, 295 S.W.3d 807, 811 (Ky. 2009)).

It was error for the trial court to rule otherwise. The contraband found after the unlawful extension was the result of an unconstitutional search of Appellant and should have been suppressed.

The Commonwealth argues that if we find the search and seizure unconstitutional, the exclusionary rule should not apply to exclude the evidence due to the independent source and attenuation doctrines. We

11

disagree. The exclusionary rule "often requires trial courts to exclude unlawfully seized evidence in a criminal trial," but it has "several exceptions." *Utah v. Strieff*, 136 S.Ct. 2056, 2061 (2016).

"[T]he independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." *Id.* The Commonwealth asserts this doctrine should apply because officers discovered the marijuana in Appellant's vehicle "in plain view, independently from any constitutional violation." However, the independent source doctrine only applies if the discovery of the evidence was "wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984). As we have held, the police committed constitutional violations while discovering the evidence; it was not found wholly independent of those constitutional violations.

We also disagree with the Commonwealth that all requirements for the plain view exception were satisfied. This instance fails the first prong, that police "must not have violated the Fourteenth Amendment in arriving at the place where the evidence could be plainly viewed." *Hazel v. Commonwealth*, 833 S.W.2d 831, 833 (Ky. 1992). The police violated Appellant's constitutional rights by unlawfully extending Appellant's seizure to hold him at the front of the police cruiser. As such, the officer did not arrive in the place to discover the evidence without the constitutional violation. Therefore, the independent source doctrine does not apply to preclude the exclusionary rule.

12

"The attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery of evidence, which often has nothing to do with a defendant's actions." *Strieff*, 136 S.Ct. at 2061. It allows evidence to be "admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." *Id.* In *Strieff*, the Court held the evidence "was admissible because the unlawful stop was sufficiently attenuated by the pre-existing arrest warrant." *Id.* at 2063.

The *Strieff* factors are: "temporal proximity between the unconstitutional conduct and the discovery of evidence," "presence of intervening circumstances," and "the purpose and flagrancy of the official misconduct." *Id.* at 2061-62. These weigh against the application of the attenuation doctrine in this case. Also, the link between the officers' unlawful seizure and discovery of the evidence is strong and direct, without any intervening circumstances. Therefore, the attenuation doctrine does not preclude the exclusionary rule.

As we have decided this case on constitutional grounds, we need not address the remaining arguments about the testimony at trial, as they are not likely to recur on remand.[1] The only remaining issue to be resolved is whether the trial court erred in entering a conviction for bail jumping.

---

[1] Among these arguments is a contention the Commonwealth implied Appellant was a convicted felon during the guilt-phase of trial by asking two officers if they always found weapons during drug arrests and if there were some people who could not legally carry guns. Both officers responded that they did not always find weapons on drug dealers and that there were some individuals who could not carry guns. Neither of them mentioned that felons could not carry firearms or that Appellant was a

### B. Bail Jumping

Appellant argues this charge should be viewed as fruit of the poisonous tree because "[h]ad he not been arrested, there would never have been a bail." Since bail jumping is a separate criminal offense, we disagree.

KRS 520.070(1), the first-degree bail jumping statute, reads as follows:

> A person is guilty of bail jumping in the first degree when, having been released from custody by court order, with or without bail, upon condition that he will subsequently appear at a specified time and place **in connection with a charge of having committed a felony,** he intentionally fails to appear at that time and place.

(Emphasis added).

We agree with our Court of Appeals, which held the statute is "plain and unambiguous," and that "the nature of the charge(s) against a defendant at the time he jumps" is the determining factor. *Curley v. Commonwealth*, 895 S.W.2d 10, 12 (Ky. App. 1995). In *Curley*, the defendant had originally been charged with a felony, but, by the time he jumped bail, had been reduced to a misdemeanor charge. Due to the "nature of the charge" at the time he jumped bail being a misdemeanor rather than a felony, the defendant could not be charged with first-degree bail jumping.

Adopting and applying the reasoning of *Curley*, here, Appellant was charged with felony drug trafficking when he jumped bail—therefore, that is the "nature of the charge" we consider. It is immaterial whether the evidence used to support the underlying charge should have been suppressed. Bail

---

convicted felon. Not only did defense counsel not object to this line of questioning, it had implied that Appellant was not dealing drugs, as he was unarmed.

jumping is an independent charge. While Appellant may well ultimately be acquitted of the drug charge, the fact still remains that he jumped bail. Appellant had to comply with the trial court's order to appear and should have disputed his charges through the proper process. To hold otherwise would encourage those defendants with a belief evidence against them is unconstitutional to avoid appearing in court. It would be a slippery slope and encourage defiance with trial courts' bonding conditions. We decline Appellant's invitation to embark upon such a perilous journey in the present case.

### III. CONCLUSION

Because officers unconstitutionally extended Appellant's stop, the fruits of their subsequent search should have been suppressed at trial. Therefore, we reverse Appellant's convictions for first-degree trafficking in a controlled substance (methamphetamine, less than two grams), possession of marijuana, and possession of drug paraphernalia. We otherwise affirm. This matter is remanded to the trial court for proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jared Travis Bewley
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General