RENDERED: APRIL 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0269-MR

TYLER BUTLER                                               APPELLANT


           APPEAL FROM CAMPBELL CIRCUIT COURT
v.            HONORABLE DANIEL J. ZALLA, JUDGE
             ACTION NO. 22-CR-00063


COMMONWEALTH OF KENTUCKY                   APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND ECKERLE, JUDGES.

ACREE, JUDGE: Tyler Butler, Appellant, appeals his conditional guilty plea, entered following the Campbell Circuit Court's denial of his pretrial motion to suppress evidence. Butler argues his rights under the Fourth Amendment were violated when law enforcement officers opened the doors of his truck and searched it without a warrant. We disagree and affirm.

# BACKGROUND

Around midnight on December 30, 2021, Fort Thomas Police Department officers were getting coffee at a gas station. Officer William Martin observed Butler in a pickup truck. The truck was running and Officer Martin could tell the truck was in reverse because its back-up lights were illuminated. Officer Martin noticed Butler was apparently passed out in the driver's seat and that Butler appeared flushed. Because the truck was in reverse and the brake lights were illuminated, only Butler's foot pressing on the brake pedal prevented the truck from rolling backwards.

Officer Adam Peak parked his vehicle in front of Butler's truck, blocking him in. Officer Martin testified they blocked Butler's vehicle because an unconscious person might exhibit a "flight or fight" response upon being awoken, and, therefore, nobody would get hurt if Butler attempted to take flight.

Attempting to wake Butler, Officer Martin shined his flashlight into the truck. When this proved unsuccessful, Officer Martin opened the door and asked Butler how he was doing. Butler woke up, and Officer Martin directed him to exit the vehicle. Butler complied – though not immediately – and Officer Martin observed Butler exhibited signs of narcotics use including a flushed appearance, nodding off, slurred speech, and constricted pupils. Butler struggled to follow Officer Martin's instructions.

Prior to Butler's exit from his truck, Officer Peak positioned himself on the passenger side of the vehicle. Officer Peak observed Butler grabbing for his keys and noticed a knife tucked between the passenger seat and the center console, next to the passenger seat buckle. Officer Peak then opened the passenger door. Officer Peak noticed a black notebook with white powder on it in the passenger seat, which would have been visible whether Officer Peak had opened the door or not. Upon seeing the white powder, Officer Peak searched Butler's truck. He found a THC cartridge for a vaporizer pen and two baggies of white powder.

The officers administered field sobriety tests which Butler failed. Butler was then arrested. Butler admitted to Officer Martin that he used marijuana, fentanyl, and cocaine. He was charged with one count each of first-degree possession of a controlled substance, possession of marijuana, and operating a motor vehicle under the influence.

Butler filed a motion to suppress the items collected as evidence during the search, which the circuit court denied. The circuit court's order concluded the officers had probable cause to believe Butler had committed a traffic violation – specifically, KRS[1] 189.430(3). It also concluded Officer Peak had acted reasonably to ensure officer safety by opening the door after observing the knife as well as Butler's apparently intoxicated state. And it concluded Officer

---

[1] Kentucky Revised Statutes.

Peak's search fell within the "automobile exception" to the warrant requirement because Officer Peak had probable cause to believe contraband or evidence of a crime was in Butler's truck.

Butler entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress. The circuit court entered its order of judgment and sentence on January 25, 2023. Butler now appeals.

## STANDARD OF REVIEW

Our review of the denial of motions to suppress is twofold. *Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019). We first review factual findings for clear error, and, second, review conclusions of law *de novo*. *Greer v. Commonwealth*, 514 S.W.3d 566, 568 (Ky. App. 2017) (citations omitted). Findings of fact are not clearly erroneous if substantial evidence supports them. *Janakakis-Kostun v. Janakakis*, 6 S.W.3d 843, 852 (Ky. App. 1999) (citation omitted). Evidence is substantial if "when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972) (citation omitted).

## ANALYSIS

*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), establishes firmly that a law enforcement officer's brief investigative detention of a

person "may constitute a seizure within the meaning of the Fourth Amendment of the United States Constitution, and as such may properly be undertaken only if the police officer has a reasonable suspicion based upon objective, articulable facts that criminal activity is afoot." *Strange v. Commonwealth*, 269 S.W.3d 847, 850 (Ky. 2008) (citations omitted); *Baltimore v. Commonwealth*, 119 S.W.3d 532, 537 (Ky. App. 2003) (footnote omitted) ("In the seminal case of *Terry v. Ohio*, the Supreme Court held that a brief investigative stop, detention and frisk for weapons short of a traditional arrest based on reasonable suspicion does not violate the Fourth Amendment."). This doctrine applies to both the warrantless stops of a person and of an automobile. *Commonwealth v. Blake*, 540 S.W.3d 369, 373 (Ky. 2018).

Though a mere "hunch" is not enough, a reasonable suspicion is something short of probable cause. *Commonwealth v. Marr*, 250 S.W.3d 624, 627 (Ky. 2008) (quoting *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 751, 151 L. Ed. 2d 740 (2002)). Reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274, 122 S. Ct. at 751. "The objective justification for the officer's actions must be measured in light of the totality of the circumstances." *Greene v. Commonwealth*, 244 S.W.3d 128, 133 (Ky. App. 2008) (citing *United States v. Sokolow*, 490 U.S.

1, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989), and *Eldred v. Commonwealth*, 906 S.W.2d 694 (Ky. 1994)).

All that said, "[p]olice officers are free to approach anyone in public areas for any reason." *Commonwealth v. Banks*, 68 S.W.3d 347, 350 (Ky. 2001). They are "entitled to the same freedom of movement that the rest of society enjoys." *Id*. Therefore, no seizure had occurred before the officers approached Butler's truck. As for Officer Peak's blocking in Butler's truck, there is a strong argument to be made that Officer Peak was exercising his "community caretaking function" as a police officer; this function is invoked "based on specific and articulable facts that lead to a reasonable conclusion that the individual requires assistance or is necessary for the public's safety." *Poe v. Commonwealth*, 169 S.W.3d 54, 57 (Ky. App. 2005) (citations omitted). It would be reasonable to conclude that an unconscious individual at the wheel of a truck that is running and in reverse gear could threaten public safety.

However, even assuming Butler was seized for purposes of Fourth Amendment analysis once Officer Peak blocked Butler's truck, "[a] seizure occurs when a reasonable person would not feel free to decline an officer's request or otherwise terminate the encounter." *Constant v. Commonwealth*, 603 S.W.3d 654, 660 (Ky. App. 2020) (citations omitted). The officers in this case certainly had at least a reasonable suspicion of criminal activity sufficient to justify their initial

investigatory encounter. Butler was passed out in the passenger seat of his truck and was unresponsive when Officer Martin used his flashlight in an attempt to get Butler's attention. Butler appeared flushed. Despite his unresponsiveness, Butler's vehicle was in reverse and only stationary because Butler's foot was pressing the brake pedal. Upon these objective, articulable facts, the totality of the circumstances supports a reasonable suspicion of DUI or other criminal activity.[2]

Once Officers Martin and Peak initiated their encounter with Butler, additional circumstances allowed them to open the doors to Butler's truck. On the driver's side, Officer Martin was unsuccessful in rousing Butler using his light, prompting him to open the driver's side door. Similar circumstances were present in *United States v. Morgan*, 71 F.4th 540 (6th Cir. 2023); both parties discussed this opinion in their briefs. In *Morgan*, the police observed the defendant seemingly passed out at the wheel of a stopped, running car. *Id*. at 541. The police did not knock on the door or shine a flashlight into it but opened the door to ask Morgan whether he was okay. *Id*. Following an altercation, the officers arrested

---

[2] The circuit court concluded the officers had a reasonable suspicion as to a violation of KRS 189.430(3), which states: "No person operating or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key, nor allow it to stand upon any perceptible grade without effectively setting the brake and turning the front wheels to the curb or side of the highway." Whether it would be reasonable for a police officer to suspect violation of this statute in light of the rear brake lights being illuminated, or whether a person asleep or otherwise unconscious inside a vehicle constitutes leaving that vehicle unattended, are questions that we need not resolve, since the circumstances surrounding the officers' initial encounter with Butler generated a reasonable suspicion of DUI.

Morgan and found drugs on his person. *Id*. at 542. They also found a pistol inside the vehicle in a cardboard box. *Id*.

The Sixth Circuit noted that police officers are exempt from obtaining a warrant "[i]f an emergency or other exigency exists" and are therefore empowered to render "emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id*. at 543 (quoting *Caniglia v. Strom*, 593 U.S. 194, 198, 141 S. Ct. 1596, 1599, 209 L. Ed. 2d 604 (2021)). And that court noted the various community service and safety functions of police officers, such as checking on the elderly or returning a lost child, which are wholly separate from their obligation to prevent or respond to crime. *Id*. However, it observed that community safety does not permit the police to bypass the warrant requirement in every instance, and "[o]nly 'when delay is reasonably likely to result in injury or ongoing harm to the community at large'" do exigent circumstances justify a warrantless search without invoking the protections of the Fourth Amendment. *Id*. at 545.

Ultimately, the Sixth Circuit concluded the police unreasonably seized and searched Morgan by opening his car door without warning. *Id*. Multiple less intrusive options were available to the officers, such as activating the lights on their police vehicles, knocking on the window, or shining a flashlight into Morgan's face. *Id*. Particularly relevant to the present case, the officer testified

that he needed to open the door suddenly because Morgan could suddenly awaken and step on the accelerator; however, the Sixth Circuit noted in that case the absence of evidence that the car was in gear and that "[e]ven a startled and groggy driver must put the car in gear before hitting the gas." *Id*. at 546.

*Morgan*, therefore, is unlike our case in two relevant respects. First, Officer Martin did attempt a less intrusive method of getting Butler's attention before opening his door when he shined his flashlight into the vehicle. Second, the lights on Butler's truck revealed the truck was in reverse gear and only immobilized because the foot of the unconscious Butler was pressing the brake pedal. Together, these distinguish it from *Morgan*, demonstrating the officers' reasonable belief that exigent circumstances permitted Officer Martin to open Butler's door without a warrant.

On the passenger side of the vehicle, other circumstances prompted Officer Peak to open the passenger side door. Officer Peak noticed Butler within arm's reach of a knife in a location where Officer Martin would not be able to see it. In order to protect Officer Martin, Officer Peak responded to the exigency and opened the passenger door.

The officers were presented with facts sufficient to generate probable cause as to the presence of evidence of criminal activity in Butler's truck, which enabled them to search the truck without a warrant. The "automobile exception" to

the warrant requirement "permits an officer to search a legitimately stopped automobile [without a warrant] where probable cause exists that contraband or evidence of a crime may be in the vehicle." *Commonwealth v. Elliott*, 322 S.W.3d 106, 110-11 (Ky. App. 2010) (modification original) (quoting *Morton v. Commonwealth*, 232 S.W.3d 566, 569 (Ky. App. 2007)).  In addition to the white powder that Officer Peak observed, Officer Martin noticed Butler's flushed appearance, constricted pupils, and that he was having trouble staying awake.  He struggled to follow instructions and failed a field sobriety test.  In combination, these facts are more than sufficient to show the officers had probable cause as to the presence of drugs in Butler's truck.

Even setting aside the question of whether the officers could open the truck's doors without running afoul of the Constitution, the white powder in Butler's passenger seat was in plain view of Officer Peak.  "The plain-view exception to the warrant requirement applies when the object seized is plainly visible, the officer is lawfully in a position to view the object, and the incriminating nature of the object is immediately apparent." *Kerr v. Commonwealth*, 400 S.W.3d 250, 266 (Ky. 2013).  Officer Peak, lawfully positioned outside of Butler's truck, could plainly see the white powder.  The powder is of an obviously incriminating nature.  Accordingly, the officers did not need a warrant to seize the substance, and the presence of the substance, in turn,

generated probable cause as to evidence of illegal activity elsewhere in the truck. The officers' treatment of Butler outside of the gas station did not violate Butler's Fourth Amendment rights.

## **CONCLUSION**

Based on the foregoing, we affirm the Campbell Circuit Court's January 25, 2023 order of judgment and sentence and, therefore, its denial of Butler's motion to suppress.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Erin Hoffman Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky